The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Thank you. Good afternoon. The first case on our docket this afternoon is 19-60699 Diaz Esparza v. Garland. Mr. Miller. May it please the court. I am Ross Miller and I represent the petitioner Santiago Alejandro Diaz Esparza. Your honors, at its heart, this case is about holding the government to its burden of proof and the facts are undisputed. Petitioner entered the United States without inspection in 1999 and he subsequently adjusted his status to that of a lawful permanent resident in 2005. In the more than 15 years since petitioner has been a lawful resident, he's been convicted of two separate crimes which have resulted in removal proceedings before the Executive Office of Immigration Review. The first conviction occurred in 2013 when petitioner pleaded guilty to the offense of deadly conduct, a Class A misdemeanor in violation of Texas Penal Code Section 22.05. What were the facts? What were the underlying facts of that deadly conduct offense? I couldn't find that information anywhere. It's not clear from the record, your honor. However, on page... No, it certainly isn't. On page 169, it appears that he was using a motor vehicle in a fashion that caused some type of potential danger to another individual. But it's not... The record isn't entirely clear on that aspect. However, petitioner subsequently received a sentence of 360 days confinement for this violation, which was probated to 12 months. Thereafter, petitioner's probation was revoked and he was sentenced to 300 days confinement. Petitioner's second conviction occurred in 2014 when he pleaded guilty to the offense of evading arrest with a motor vehicle, a third-degree felony in violation of Texas Penal Code Section 38.04. For this violation, petitioner was sentenced to two years confinement and it also triggered his first removal proceedings. Your honors, in his first proceedings, the government charged that petitioner was removable for having been convicted of an aggravated felony, namely his evading arrest conviction. Petitioner's case was ultimately appealed to the Supreme Court, which remanded his case in light of its 2018 decision in Sessions v. DiMaia. On remand, the board terminated proceedings, but the government... If we know the procedural history, counsel, I'm not trying to dislodge you. It's just you've got three big issues in your times clicking. Which issue do you want to get to first? Race judicata or the turpitude question or the admissions issue? Certainly, your honor. The issue that I would like to discuss first is the crime involving moral turpitude issue. Petitioner maintains that this issue is dispositive of his case and that it deserves the court's attention first and foremost because in his second proceedings, petitioner has been charged with having been convicted of two crimes involving moral turpitude at any time after his admission into the United States. Petitioner concedes that his conviction for evading arrest constitutes a conviction for a crime involving moral turpitude in light of this court's precedent in the 2017 case Sessions v. Lariah. However, petitioner does not concede that his conviction for deadly conduct under Texas Penal Code Section 22.05 constitutes a conviction for a crime involving moral turpitude. If we accepted your argument there, would you frankly admit that we would be creating a split with the Ninth and the Third and the First as to endangerment statutes with recklessness as scienter? The court would be. However, your honor, this position would be consistent with the board's own precedent as well as with this court's precedent in the 2016 case Gomez-Perez v. Lynch. Now, although the term crime involving moral turpitude is not specifically defined under the Immigration and Nationality Act, the board has long held that conduct which is inherently based, vile, and depraved, conduct which shocks the conscience, meets the definition. Such conduct has been found to include murder, sexual assault, or possession of child pornography. But because state statutes of conviction are defined differently, courts must employ the categorical approach in order to determine whether or not— Isn't the simple issue—I just interrupted because of time—but isn't the simple issue why isn't creating the risk of serious or substantial physical injury something that's against the norms of society, right? On the actus reus side of the equation, why wouldn't that alone decide this issue? Your honor, because as the board and this court have long reasoned, mere reckless conduct typically does not reach the level necessary for a violation to be morally turpitudinous. Mere reckless conduct often requires that the actor may be aware of a risk of injury or aware of the risk of their conduct, but they in fact could even hope that the resulting conduct doesn't occur. And when Congress set up the crime involving moral turpitude provisions of the Immigration and Nationality Act, Congress clearly wanted to punish actors for base, vile, or depraved motives and for acting on those motives. As the court recognized in Gomez-Perez v. Lynch, where a state statutory provision can be violated with mere reckless conduct— What if he had been charged with negligent homicide and convicted of that? Then it's very possible— Hypothetically, he ran the stop sign and killed somebody. Then your honor, it's possible that could constitute a crime involving moral turpitude, but— What's the difference from his standpoint? His mental state was exactly the same. It's just in one case no injury resulted and in another case death resulted. What does that have to do with the mental state of the defendant? Your honor, what it has to do with the mental state is that the mental state in your example is accompanied by a serious infliction of bodily harm. Under Texas Penal Code Section 22.05, there's only the mere risk that reckless conduct will result in harm. There's actually no requirement that it in fact will result in harm. This position, as the court recognized in Gomez-Perez v. Lynch, is consistent with the board's own precedent on this issue. In the 2007 case, Matter of Salon, there the board recognized that while a state that offense can in fact constitute a crime involving moral turpitude, typically for that state statutory offense to meet the crime involving moral turpitude definition, it must be accompanied by a serious infliction of bodily harm. The board, in fact, in Matter of Salon recognized that as the mental—as the men's REIA decreases from intentional all the way down to recklessness, the board would expect that the resulting level of harm would be more severe in order for the state to meet a crime involving moral turpitude. And we know from the statute of issue in this case— From an element standpoint, if we're going to look at the elements, it doesn't have anything to do with actually whether there was injury or not, right? It doesn't, Your Honor. But again, the elements here don't require any level of harm whatsoever. They merely require the risk of harm. And since we know that this level of misconduct under the typically does not amount to a crime involving moral turpitude, petitioner would submit that his evading—or excuse me—that his deadly conduct conviction simply does not meet the inherently base, vile, depraved language that the board has consistently employed for these types of statutory offenses. Petitioner would also note that under this court's precedent in Gomez-Perez, Texas assault was analyzed under Texas Penal Code section 22.01a, the same chapter of the penal code under which petitioner's deadly conduct conviction falls, chapter 22. In concluding that Texas assault does not constitute a crime involving moral turpitude, as we've discussed, this court reasoned that because it can be committed with mere reckless conduct and crimes involving moral turpitude typically require a higher level of mental culpability, it didn't definition of a crime involving moral turpitude. But petitioner would also note that under Texas assault under 22.01a, actual bodily injury is required. And the court there found that even with that level of resulting harm, there simply wasn't enough harm for the court to conclude that Texas assault constitutes a crime involving moral turpitude. That was a misdemeanor assault. Am I right that it's any bodily injury, including just physical contact? That's correct, Your Honor. And that's exactly why with mere reckless conduct, which captures such a broad variety of offenses that the court ultimately concluded that mere recklessness simply doesn't satisfy the crime involving moral turpitude requirement. Again, this isn't conduct, which is inherently base, vile, depraved conduct, which shocks the conscience. It touches upon conduct under the minimum reading test that clearly is not a crime involving moral turpitude. And petitioner's deadly conduct conviction similarly touches upon conduct, which does not meet this definition. As a result, Your Honors, petitioner would respectfully contend that the government is simply unable to meet its burden of proof in this case to establish that his conviction for deadly conduct constitutes a conviction for a crime involving moral turpitude. As a result, he's not removable as charged in his notice to appear. Your Honors, even if this court departs from its precedent in Gomez-Perez and departs from the board's long-standing precedent, finding that mere reckless offenses can equate to crimes involving moral turpitude when they are accompanied by a serious infliction of bodily harm, petitioner still contends that his proceedings must be terminated because the doctrine of res judicata applies to the case at bar. And for this proposition- I have a question for you. My recollection is that under the Texas state bar rules, someone who's convicted of a felony crime involving moral turpitude can be disciplined. Have you looked at that? How Texas treats that for purposes of the lawyers? I haven't, Your Honor, but my assumption would be that there still is some level of resulting harm that would have to be demonstrated under that provision. Once again, under Texas deadly conduct, it only requires the mere risk of harm. There is no actual harm that's required. Consequently, under this court's own precedent in Gomez-Perez, once again recognizing the board's long-standing precedent in matter of salon, there simply isn't the level of harm or any aggravating circumstance here that would give rise to a finding that petitioner's deadly conduct conviction constitutes a conviction for a crime involving moral turpitude. Furthermore, Your Honors, even if this court does depart from its prior precedent in Gomez-Perez, petitioner still continues to maintain that the present charges of removability lodged against him are barred by the doctrine of res judicata because his evading arrest conviction was litigated in his previous proceedings to a valid final judgment. In support of this position, petitioner cites to this court's precedent in 1993 case INS versus Medina. There, a non-citizen of Mexico who was also a citizen of the United States by virtue of his father's birth in America, sought a certificate of naturalization from the U.S. government. The U.S. government placed Medina in proceedings, and at trial, the government conceded that Medina was in fact a citizen of the United States and engraved appeal in his case. The government then subsequently issued new charges of removability against Medina, and when Medina argued that the second proceedings were barred by the doctrine of res judicata, the agency rejected these arguments. However, this court concluded that res judicata did apply to Medina's second removal proceedings, and it recognized that res judicata bars a subsequent suit on the same issues litigated by the same parties, same issues, or any part thereof, where those issues are litigated to a valid final judgment on the merits. Petitioner's case clearly demonstrates that his evading arrest conviction was litigated on the merits, concluding on a valid final judgment resulting in termination of his initial removal proceedings. That case you're citing, that's INS versus? Medina, your honor. Was it cited in your brief? It was, your My apologies, yes. No, that's fine. Remind me, how do you respond to the Peters footnote that opposing counsel points out to suggest that we've already decided this issue of claim preclusion and the government can switch and sort of embrace a different statutory basis altogether? Certainly, your honor. Medina's is, excuse me, Peters is clearly distinguishable. As you know, in a footnote, the court does acknowledge in Peters that subsequent removal proceedings can be brought under a wholly separate provision of the Immigration and Nationality Act. However, in that case, Medina's, excuse me, Peters' first proceedings were never litigated to a valid final judgment. Instead, the board, the immigration judge found that he was not eligible for bond because he purportedly been convicted of an aggravated felony. Peters then appealed to the board of immigration appeals, the bond denial, and the board reversed the judge's determination after the board concluded that his conviction wasn't for an aggravated felony. Once the government realized that they weren't likely able going, they weren't likely to pursue, proceed, or excuse me, to succeed on that initial charge of removability in that case, they withdrew it and they subsequently charged him for having violated the Controlled Substances Act, a different provision of the Immigration and Nationality Act. So in the case of Barr, it's clear that petitioner's matter is distinguishable because his evading arrest conviction was litigated to a valid final judgment in his initial proceedings. And since the government relies on that conviction in order to establish removability in the case of Barr, his second race judicata. Your honors, I respectfully reserve the rest of my time for rebuttal. Thank you, Mr. Lawrence. Thank you, your honor. May it please the court, Victor Lawrence on behalf of the attorney general. This court should dismiss this petition for review because the board correctly determined that DHS's renewed immigration proceedings were not barred by race judicata and that Mr. Diaz was convicted of two I'm happy to start in the same order as my opposing counsel and go to the moral turpitude question unless your honors have a different preference. But we would say that we strongly urge this court to find that deadly conduct under 22.05 A is a crime involving moral turpitude. This is a crime that when we use a categorical approach and a minimal reading approach, it only reaches offenses involving moral turpitude. It requires the perpetrator to recklessly engage in conduct that places another human being in imminent danger of serious bodily harm. This conduct is contrary to the accepted rules of morality and the duties owed between persons or society in general. I respectfully disagree with my opposing counsel about the issue of harm. Harm is simply not required and is not essential in this part of the analysis regarding crimes involving moral turpitude. And for that, I asked the court to look at a matter of wheel where they specifically noted that the actual infliction of harm is not determinative of the moral turpitude question. And that, by the way, is also quoted in the matter of the Hernandez decision, which I respectfully suggest that the court may defer to as far as having a very persuasive analysis of why this deadly conduct is, in fact, a crime involving moral turpitude. And I think, I mean, my read is other circuits have agreed with you, but I would have thought you'd be emphasizing the harm, given the precedent we've got in Gomez-Perez, that reckless scienter does seem less culpable than whatever depravity or turpitude is. And the way that that precedent would be distinguishable is that here the harm at risk is significantly higher, but you're telling us not to look at the harm? Well, the potential harm. I agree with you, Your Honor, that the potential harm is significantly higher because we're talking about serious bodily injury. Yeah, I didn't mean for my comments to be interpreted as ignoring harm altogether, but my opponent seems to suggest that some sort of harm, actual harm, is necessary. But what brings this within the gambit of moral turpitude is the idea that they're putting somebody at serious risk of potential harm. And so, yes, you do look at harm in that sense. I still need some clarification. I understand that the offense about the vehicle, that that would constitute a crime. But what about the initial offense? I'm not sure what it was, the deadly conduct offense. Are you equating both of those? Well, what we're saying, Your Honor, is that both of those are, in fact, crimes of non-moral turpitude. He's already conceded the one about the evading arrest. So really, we're just focusing on... I understand that, but I don't know what the deadly conduct is. And Your Honor, I'm not familiar with the exact facts that resulted in that charge, but nor is it important to the court's analysis because we're doing the categorical approach where we're looking at the minimal reading approach where we're trying to figure out whether there are any crimes that could come within this statute that would be less than something that's moral turpitude. Any offense that would not involve moral turpitude. That would be reckless? Just reckless? Well, the point about that is it's not just being reckless. The perpetrator is consciously disregarding the risk that he's putting somebody in of serious bodily injury, and that's what lifts it into the sphere of moral turpitude. So yeah, now my point is... The OIL wants a nationwide rule as to these recidivism situations. So I guess I'm going to ask the same question. What circuits have already ruled that endangerment statutes, state endangerment convictions, are crimes of moral turpitude? Am I right that it's the Seventh and the Ninth? Are those the... No. I believe the First as well in Itty v. Holder. So the Ninth Circuit in the matter of Leal, the First Circuit in Itty v. Holder, and I think the Eleventh Circuit also. I'm not sure about the Seventh Circuit when you raised that. No, I guess the Seventh is on the admissions issue. The Third Circuit is on the engagement. But so you don't... There is no contrary authority. If we were to rule against you, we would create a significant split? I believe that's true, Your Honor. It would be a split because of these other courts that have looked at reckless endangerment statutes. First of all, they said that harm is not determinative of the issue. And yes, if the court is going to consider that, oh, somebody must be physically harmed, and therefore, in order to bring this into moral turpitude, then yes, that would be... I would say the court is effecting a split. But one reason why I urge the court not to follow this idea about Gomez Perez as well is because in that case, the parties agreed. There wasn't an analysis about the categorical approach very much in the Gomez case because the parties agreed that didn't qualify categorically as a CIMT. So the focus and the thrust of Gomez was using the modified categorical approach. And also, I think, as Your Honor pointed out before, we're talking about the tort statute where all that's required is a little bit of harm. A cut or a bruise would suffice. So it's different when you're talking about recklessly putting someone in danger of bodily harm and actually inflicting that harm, or recklessly and consciously disregarding the risk that you're going to potentially kill somebody or cause serious bodily harm. Those are separate analysis and the court should treat them as such. And we would suggest that Gomez versus Perez simply is not applicable in this analysis, given those differences in statutes. Unless the court has a preference, I'll go into race judicata. We believe that Peters is squarely on point. Medina versus INS is not on point, as my opposing counsel suggests. There, at one point, the government conceded that the individual is a citizen. And then they said that he was not a citizen. And the court said that you were barred from taking those different approaches. And that was the thrust of the race judicata issue in Medina. I guess why just employ, just use regular claim preclusion analysis. Why aren't you barred? In other words, you had the same convictions before, you chose one legal theory, no fault of your own, but the Supreme Court says it's not valid. Wouldn't normal claim preclusion mean you don't get a second bite as to the same convictions using a theory that you had available to you before? No. Simply put, in Peters, no. I know what the Peters footnote says, but I guess I'm wondering, it's a footnote, and I sort of was more persuaded by the Sixth Circuit analysis. I'm sure you're prepared to distinguish it in Aaron Gury. It may be we have no freedom to, because Peters is binding, but I'm just asking you to explain why the Sixth Circuit is wrong coming to an opposite conclusion. Well, the Sixth Circuit was looking at using the same conviction under two different theories of removal. But are you doing that? Do you accept that as the right holding for those facts? I don't think so, Your Honor, because under one, you're looking at evading arrest as being an aggravated felony, and now we're looking at a completely different removal statute and saying evading arrest and deadly conduct are two crimes involving moral turpitude, and for that reason, he should be removed. Okay, sorry. Tell me, if you accept the Sixth Circuit reasoning, what is the rule of law there that isn't applicable here? If my memory is correct, in Renger, however you pronounce it in the Sixth Circuit, they were using two different theories of removal over the same fact situation. So it was one ball of facts, and they were saying, first time you use this charge removal, next time over those same facts, complete. You change your theory of removal. Here, you have one crime, and the first time we said it was an aggravated felony, and then that didn't work, so we said, okay, leave that aside. Now what we're saying is we have two different crimes. We're not talking about aggravated two crimes together are two crimes involving. I'm a little bit lost if you're accepting the Sixth Circuit reasoning, because it sounds like you're using the same fact, one conviction, on a different legal theory. So I guess, are you embracing the Sixth Circuit rule? It was correct for its case, but it's factually distinct. If that's the answer, you can move on, and I'll just figure it out myself. Or do you think the Circuit analysis was flawed? I think the Sixth Circuit analysis was flawed, and that this court's better precedent is relying on Peters, and even the two cases we raised in our 28 J letters, as showing that this is a different nucleus of operative facts. You're not dealing with the same claim, and that's important for the ratio to common analysis with the four elements. Both cases didn't deal with the same claim or cause of action. At best, you know, we're saying, yes, a Peter case is a case, of that first claim, evading arrest. Yeah, there we said it was an aggravated felony. Now we're saying it was a crime involving moral turpitude. It's two different issues, Your Honor. We would suggest that ratio to common does not apply. Well, what about the fact that in the second proceeding, you're basing it on a separate provision? I think that's highly relevant and dispositive, Your Honor. You know, the first time we were saying, and that's what the court that Peter says, about using a wholly different removal statute. So initially, we were basing it on 1227A3, I believe that's correct, A23, or A3, and that was the aggravated felony. Now we're saying 1227A2, which is crimes involving moral turpitude. You see the problem. I mean, I understand that, and that may well be the law, but it allows the government to get two bites, right? You had that same legal theory available for, you chose the other one, a couple years go by and you lose, the government can just reload on a theory they had available? And that's what, I appreciate Your Honor's question, and that's one of the things that the court said, I can't remember whether it was in Chavez-Mercado or Cruz very recently. They said the fact that we had this theory available to us before is not relevant to, or not determinative of the situation. That was either in the Cruz case or Chavez-Mercado. So, and there they said the focus, again, was on the same nucleus of operative facts, which again, I think we have a different nucleus of operative facts in the second removal proceedings. So, we do think it's a crime involving moral turpitude. We don't think it's barred by ratio and cata, and we think that we strongly urge court to find that both of these convictions for crimes involving moral turpitude occurred after his admission into the United States. There's, you know, one thing I want to point out in the record itself, when he was given his notice to appear, he was asked specifically, how do you plead to these charges? And the second charge that appeared in the factual allegations was that he was admitted to the United States in 2005. And that was on page 163 of the record. And on page 68, he admitted that he had been convicted in 2005. But that's just one reason why the court should find that these 2013-2014 convictions occurred after his admission into the United States. You don't really care. I mean, I agree with you. You don't want to go out of the record, but who cares if he's a lawful resident, he leaves and gets inspected coming back. Your theory is, at the time of status, since he originally came in illegally, it's functionally the equivalent of an admission. That's when he gets warned, now you're here, we're letting you be here, you better not commit crimes. Isn't that your theory? In 2005. Yeah. So he comes without entry, without inspection in 1999. 2005, yes, he's applying for admission through the adjustment of application, adjustment of status process. And he gets admitted at that time, and the two crimes occur after that. It sounds intuitive, but the whole problem is just definitionally, in the INA, at least in another context, admission has been narrowed to with inspection, right? That's the whole source of the problem here, textually. I didn't hear the last word you said. Well, Archie, essentially, your position requires us to accept that admit can mean different things in different parts of this big labyrinth of law. Right, which I think your Honor, yourself said in Marcus, that statutory context matters. And here, clearly, statutory context matters. And I think the better holding for the court to look at is Deuce versus Holder. But aside from that, you also have the board's decisions in matter of enters without inspection. Several years later, applies to adjust status, and that is considered admission. And it's also inherent in the text of 1255 that once somebody is granted adjustment status, they're reported as being admitted into the United States. So, yes, I think, also, in the record itself, there's nothing to say that he was admitted into 2019. I know that petitioner filed a motion to supplement the record. But in the record itself, it never, there's nothing to indicate that an admission occurred at that time. It really doesn't matter, because the admission that matters is the one in 2005, when he was granted adjustment status and the crimes occurred after that. So, to engage in this kind of absurd result that it wasn't, even though he's here in 1999, it wasn't until 2019 that he's actually admitted into the country, and the crimes occurred previous, therefore, you can't consider him removal, is kind of, we would say, an absurd result that should not take place. So, unless the court has further questions, we would hope that the court dismisses this petition, because, again, race-driven conduct does not bar these proceedings, and he has been convicted of two crimes involving moral turpitude after his admission into the United States. Thank you. Mr. Miller, rebuttal. May it please the court. Petitioner respectfully submits that the government has failed to meet its burden of proof in this case for two reasons. First, because respondent fails to demonstrate how Gomez Perez is not controlling to the outcome of petitioner's argument that his crime involving moral turpitude, excuse me, that his conviction for deadly conduct is not one involving moral turpitude. And second, because the authorities that the government relies upon to argue that race judicata does not bar the second claim at issue in this case are distinguishable. Regarding the first point, your honors, petitioner continues to maintain that this court's holding in Gomez Perez is controlling to the outcome of this case. Although the government tries to distinguish Gomez Perez from the case at bar, essentially, once more, this is the same chapter of the Texas Penal Code, chapter 22, that involves both the assault crime under 22.01 that was analyzed by this court in which is at issue in this case. The same mens rea, recklessness, was required to violate both provisions of the asylum, or excuse me, of the assault statute as well as of the deadly conduct statute. And once again, this court concluded in Gomez Perez that where a statutory conviction requires a mens rea of mere recklessness, that mens rea is not sufficient to establish that the We apply that reasoning once more to the case at bar. It's clear that petitioner's deadly conduct conviction is not one for a crime involving moral turpitude. Additionally, petitioner would note that in a 28J letter we filed in this case, petitioner cites to Texas State Court Collins v. State out of the Ninth Court of Appeals of Beaumont. Petitioner cites that case because he believes it demonstrates that his conviction clearly under Texas Penal Code section 22.05 clearly touches upon conduct that is not morally turpitudinous. There, Collins was charged with aggravated assault with a deadly weapon after she was involved in a car accident. And she conceded at trial that she failed to keep a proper lookout, that she missed a stop sign when traveling at approximately 35 miles per hour, and that the resulting accident caused serious bodily injury to another individual. On appeal, Collins argued that she was entitled to a jury instruction that she could be convicted of a lesser included offense, deadly conduct, the same provision that's at issue in petitioner's case. The trial, excuse me, the Court of Appeals rejected this argument after it recognized that Texas courts have consistently found for deadly conduct, it covers only dangerous or risky acts that cause no physical harm. If we apply this reasoning in petitioner's case, it's clear that there is simply no harm that's caused by his deadly conduct conviction. Once again, it's the mere risk of harm. And as noted previously under the court's precedent in Gomez Perez, the actual harm that was addressed in the Texas assault statute didn't meet the definition of a crime involving moral turpitude. Accordingly, petitioner continues to maintain that his deadly conduct conviction also would not meet this definition. Regarding the race judicata issue, your honors, the government in 28J letters cites to this court's more recent precedent in the 2021 case Cruz Rodriguez versus Garland as well as in the 2020 case Chavez Mercado versus Barr for the proposition that race judicata does not apply in this case. However, those authorities actually support petitioner's argument. First of all, in Chavez Mercado, the non-citizen was charged with evading arrest and burglary. In his initial removal proceedings, the government tried to remove him based on the charge that his evading arrest conviction was for an aggravated felony, but those proceedings were subsequently terminated and then he was charged in second proceedings based on his burglary conviction. The issue there, your honors, is that both of those convictions independently would have given rise to charges of removability. The first, the evading arrest conviction, although it was litigated in previous removal proceedings and resulted in a valid final judgment termination just as in petitioner's case, that case is clearly distinguishable because the government used the second charge of removability, burglary, which hadn't been litigated to a valid final judgment in his subsequent proceedings to charge Chavez Mercado with removability. If we apply the same reasoning in the case at bar, it's clear that because petitioner, both his deadly conduct and his evading arrest convictions form the basis of his charge of removability in proceedings, that the doctrine of res judicata applies. Thank you, your honors. Thank you, counsel. Your case is under submission. Thank you.